C. H. AND L. J. McCORMICK, PLAINTIFFS IN ERROR, V. CHARL PETERS, DEFENDANT IN ERROR.

1.  **The Evidence** considered, and *Held*, Insufficient to sustain the verdict.

2.  **Negotiable Instruments:** PRINCIPAL AND AGENT.   J. B. D., a banker, had in his possession a note, past due, for collection, on account of the payees, applied to the maker, C. P., for payment, who was unable to pay in cash, took from him in payment a note made by one C. H., not yet due, agreeing to afterward deliver the note of C. P. to him, but retained the same until after the C. H. note became due, which not being paid, returned the note of C. P. to the payees with the C. H. note attached thereto.   In an action by the payees against C. P. on his note, commenced about a year after the maturity of the C. H. note, which was unpaid and uncollectible, it being in evidence that J. B. D. had no authority to take the C. H. note in payment of the C. P. note, and there being no evidence of any notice or knowledge on the part of the plaintiffs that said note had been taken in payment, *Held*, That the plaintiffs were not bound by the agreement of J. B. D. to take said note in payment, and a verdict for the defendant set aside and a new trial granted.

ERROR to the district court for Valley county.   Tried below before TIFFANY, J.

*E. M. Coffin, E. J. Clements, H. Westover*, and *T. L. Redlon*, for plaintiffs in error, cited: *Aldrich v. Goodell*, 75 Ill., 453.   *Smith v. Felton*, 85 Ind., 223.   *Grove v.*

*Roberts,* 6 La. Ann., 210. *Lamberton v. Windom,* 12 Minn., 232. *Reeves v. Plough,* 46 Ind., 350. *Powells v. Henry,* 27 Ala., N. S., 612. *Olney v. Jackson,* 2 E. Rep., 712. *Marschetz v. Wright,* 6 N. W. Rep., 511. Colebrook on Collateral Securities, 148. *Aldrich v. Goodell,* 75 Ill., 453. *Powells v. Henry,* 27 Ala., N. S., 615. *Wells v. Wells,* 53 Vt., 1. *Robinson v. Hurley,* 11 Ia., 410. *Rice v. Benedict,* 19 Mich., 132. *Hughes v. Kellogg,* 3 Neb., 194. *McCormick v. Keith,* 8 Id., 145. *Padfield v. Green,* 85 Ill., 530.

*A. M. Robbins,* for defendant in error, cited: *Hapgood Plow Co. v. Martin,* 16 Neb., 27. *Wellauer v. Fellows,* 48 Wis., 105. *Bank v. Bank,* 16 Wis., 125. *Joslin v. Miller,* 14 Neb., 91. Story on Agency, Sec. 244. *Doggett v. Emerson,* 3 Story, 700. *Brewer v. Sparrow,* 7 B. & C., 310. 1 Wait's Actions and Defenses, 233.

COBB, J.

This action was originally commenced before a justice of the peace of Valley county. Having been appealed to the district court of said county, the plaintiffs filed their petition, setting up as their cause of action against the defendant a promissory note executed by the defendant, payable to and delivered to them, under date of August 5, 1879, and payable December 1, 1879, for the sum of seventy-five dollars, with interest at 7 per cent per annum from date until due, and at 10 per cent after due.

The defendant's answer admits the making and delivery of the note, and sets up that it was paid and satisfied in the forepart of the year 1880, then past due; that the plaintiffs' agents agreed to take, and accepted in payment, the note of Charles Harrington for $125, dated January 1, 1880, due in one year, with interest at 10 per cent from date, agreeing to pay the difference to defendant in cash

or farm machinery as he should elect, the plaintiffs assuming the risk and responsibility of collecting the Harrington note without endorsement or guaranty of defendant, and agreeing to restore to defendant his note now sued upon, which they have failed and refused to do.

The defendant claims that the sum of $72.50 is due on account of the difference in principal and interest of both notes, and asks judgment therefor.

The plaintiffs, in and by their reply, deny that they purchased the Harrington note, and all other allegations set up in defense of their action.

There was a trial to a jury, with verdict for the defendant for $48.96, which was set aside and new trial granted.

On the second trial, verdict was found for the defendant for $4.50. The plaintiffs moved for a new trial, which was overruled, and judgment entered on the verdict.

The plaintiffs bring the cause to this court on error. They assign many errors, but such of them only will be considered as are insisted upon in the brief of counsel, and deemed necessary to a decision of the case.

1.   The verdict is not sustained by the evidence.

There is a sharp conflict in the evidence as to the facts upon which the defendant's claim of payment is based. The defendant himself, his son-in-law (Lang), and his daughter, now Mrs. Williams, testified that, sometime in the spring of 1880, C. W. Walthers, local agent of the plaintiffs at Sutton, and J. B. Dinsmore, banker of that place, called on the defendant at his temporary residence in the western part of Fillmore county, some seven miles from Sutton, for the purpose of collecting the note sued on.   The defendant was engaged in fixing up his wagon, preparatory to removing to Valley county, which purpose he accomplished some two weeks later; that Walthers and Dinsmore demanded payment of said note, which defendant declared his inability to immediately make.   They then demanded security.   He spoke of having a note on

one Charles Harrington for $125, to become due the following January. This they were willing to take as collateral security, but he refused to let them have it as collateral security, but that he gave it to them in payment of his note for $75, the balance of the Harrington note, and interest, after deducting the amount of defendant's note, with interest thereon at ten per cent per annum, to be sent to the defendant when the said Harrington note should become due, and which note said Walthers and Dinsmore agreed to collect at their own risk; that defendant's note was to be delivered up immediately, but as they did not have it with them, they were to deliver it to him the next day, in case he called or sent for it; if not, it was to be sent to him by mail.

On the part of the plaintiffs, Walthers and J. B. Dinsmore testified that they called on the defendant for the purpose of collecting, or, failing in that, of securing the defendant's note for seventy-five dollars, then several months past due; that Mr. Dinsmore had the note with him; that he took it out and made a mental calculation of the interest, and stated the amount due on it; that defendant stated his inability to pay it; that they asked him to secure it on his cattle; that he declined to secure it in that way, stating that a part of the cattle referred to were already mortgaged, and that the rest of them belonged to his wife, but that he had a note on Charles Harrington, not yet due, which he would give them as collateral security on the note; that they agreed to take it, and did take it in that way, and that as said note was for more than the principal note, they agreed to return the overplus to him when said Harrington note was paid. They deny having agreed to collect it at their own risk. They further testified that the Harrington note was attached to defendant's note, and both delivered to a general agent of the plaintiffs.

The plaintiffs introduced the deposition of Charles H. Harrington, in which he testifies that, from a date ten

months prior to the date of the Harrington note becoming due, the said Charles H. Harrington, the maker of said note, has had no property out of which the said note could have been made, not exempt from execution.

There was sufficient evidence that the Harrington note was unpaid and in the hands of the plaintiffs, or their attorneys, at the time of the first trial of this cause in the district court.

Whatever would probably have been our verdict, had we sat in the place of the jury who tried this cause, we cannot say that there is not evidence to sustain the finding of the jury, in so far as it depends upon the question whether the defendant delivered the Harrington note to Walthers and Dinsmore in payment of his note, or only as collateral security.   But in so far as it depends upon the question of the authority of Walthers or Dinsmore, or both of them together, to accept of the Harrington note, in payment of the defendant's note, it is quite different; and more especially, when we consider the terms of the agreement which the evidence of defendant and his witnesses tends to prove that they did make.   It is not claimed, nor can it be, that the mere possession of the note by Walthers and Dinsmore is evidence of authority on their part to accept of the Harrington note in payment of it; and less, if possible, is such possession evidence of authority to bind the plaintiffs by an agreement to pay to the defendant the difference between the nominal values of the said notes upon the falling due of the Harrington note.   And it may be said, once for all, that there is no evidence in the case that either Walthers or Dinsmore had, or claimed to have, any authority to bind the plaintiffs in respect to the note of defendant further than that which its possession implied and carried.

But, Walthers and Dinsmore having, without authority, received the Harrington note in payment of the note of defendant, have the plaintiffs ratified such act, or so acted

in reference to the transaction as to be estopped to deny the authority of their agents to do that which they did do in the matter? Counsel for defendant in error cites many cases to the point that they are. Among these, and of those most in point, are: *Bank v. Bank,* 16 Wis., 125, and *Paine v. Wilcox,* Id., 225. I quote so much of the syllabus of the first as is applicable to the point here raised: "If the principal wishes to repudiate the unauthorized act of his agent, he should do so when it is brought to his knowledge; and he cannot avail himself of an unauthorized act and derive a benefit therefrom, and then repudiate it to the injury of the other party." Also the second: "W. had obtained a judgment of foreclosure against A., who was the owner of the equity of redemption, and A. was about to appeal from the judgment and stay the sale, which he was induced not to do, upon the faith of a verbal agreement with the attorney of W. that the sale should take place and the property be bid off by W., and that he would convey the same to B., upon certain conditions, including the payment of the amount of the judgment, with interest and costs, which agreement was to be reduced to writing after sale. W. acquired the property at such sale, but refused to sign such agreement or perform the same, and denied the authority of his attorney to make it. *Held,* 1. * * 2. That W. could not adopt the act of his attorney so far as to hold the title acquired at such sale, and repudiate as unauthorized the agreement by which the sale was allowed to take place."

Counsel in the brief also cite 1 Wait's Actions and Defenses, 133. I quote a part of the section cited: "Where a principal, with full knowledge of all the facts and circumstances of a case, deliberately ratifies or acquiesces in the acts or omissions of his agent, he will be bound as fully as though he had given a previous authority in relation to the acts or omissions. * * * But to render a ratification binding upon a principal, it must

be made or founded upon a full knowledge of all the material facts and circumstances affecting his interests. * * * A ratification by a person of an act done in his behalf by another without authority, if made under a misapprehension, or in ignorance of the full scope of the act, is voidable to the extent of the mistake."

These cases and authority doubtless express the law.

Now, assuming, for it must be assumed for the purpose of this opinion, that the agents of the plaintiffs, without authority, took the Harrington note in payment of the note of the defendant, and made the agreement in respect thereto, as stated by the defendant and his witnesses in their evidence, have the plaintiffs, with full knowledge of all the facts and circumstances of the case, deliberately ratified or acquiesced in the said acts? So far as the evidence before us sheds any light upon the subject, it is to the effect that the plaintiffs nor their attorney or general agents ever were informed that their agents had taken said Harrington note in payment, or of any of the facts or circumstances in connection therewith, but, on the contrary, the retention of the note of the defendant by the agents, after taking the Harrington note, and the return of the two notes attached together to the general agent of the plaintiffs, instead of informing the plaintiffs of the fact that the one had been taken in payment of the other, was calculated to inculcate the belief on the part of the plaintiffs that the defendant's note remained unpaid. The next that is heard of the notes is when they were, still attached together, presented for payment of defendant's note to him, by Mr. Coffin, attorney for the plaintiffs, as per his undisputed evidence. It does not appear that the plaintiffs ever presented the Harrington note, or assumed any act of ownership over it, except its mere possession.

Counsel for defendant in error cites the case of *Hapgood Plow Co. v. Martin*, 16 Neb., 27, to the point that the retention of the Harrington note for three years is

sufficient to raise the presumption that it was received in payment of defendant's note.

We have already seen that, upon the evidence as found by the jury, the Harrington note was taken by the agent, Dinsmore, in payment of the note of defendant. It is therefore unnecessary to indulge in presumptions as to that. The question now under consideration is, whether the plaintiffs, after receiving said note, with the understanding on their part that it had been received by their agent as collateral security, held the same for a sufficient length of time, or in other respects treated it in such a way as to raise the presumption that it was a payment. The only evidence in the case which tends to shed light on this point is that of the witness, Dinsmore, which I quote:

Q. What did you do with that Harrington note?

A. I sent it to J. J. Wogan, general agent for the South Platte country, at Lincoln.

Q. It was some time after the Harrington note was due?

Q. You held the Harrington note until it was due?

A. Until after it was due.

Q. Did you sue the Harrington note?

A. We did not.

Q. Didn't commence a suit on it?

A. We didn't.

Q. You say you, personally, wasn't acquainted with this Harrington?

A. I was not until after the note left our possession.

Q. How long after the note left your possession that you got acquainted?

A. It was '82 or '83. I think it was '82.

There is therefore no conclusive evidence that the Harrington note left the hands of the agent, Dinsmore, earlier than sometime in the year 1883, though it is probable that it did as early as 1882. The next we hear of the note it was in the hands of the attorney, Coffin, shortly before

suit was commenced on the defendant's note in the justices' court. We are without evidence as to when this was, but as the action was commenced before W. A. Westover, justice of the peace, on the 6th day of January, 1883, it must have been before that date that plaintiffs' attorney, Coffin, presented the two notes to defendant, and demanded payment of the principal note. The facts of the case, therefore, fall far short of those of the case cited, and fail to bring it within the authority of that case.

I therefore see no escape from the conclusion that, while there is evidence in the case, which was believed by the jury, that the agent or agents of the plaintiff received the Harrington note in payment of defendant's note sued on, there is no evidence that such agent or agents had authority from the plaintiffs to receive such note in payment, but, on the contrary, the evidence is that they had no such authority. Nor is there evidence that the act of said agents in receiving said note in payment was ratified by the plaintiffs, either expressly or impliedly; nor that the said plaintiffs retained the possession of said note long enough before the commencement of suit on the note of defendant to raise a presumption that they had received it in payment of the note sued on, while the evidence is satisfactory that the Harrington note was, at all times, uncollectible and worthless.

The conclusion is therefore irresistible, that the verdict is unsustained by the evidence.

There are two bills of exception in the case, and what was evidently intended for two transcripts, but there are but one set of instructions, and while it is probable that these instructions were read to both juries, there is no certificate or other record evidence that such was the case; and as I have come to the conclusion that there must be a new trial for the want of evidence to sustain the verdict, neither the errors based upon the instructions, or other errors occurring at the trial, will be examined.

The judgment of the district court is reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.